IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LNV CORP.,

    *Plaintiff,*

v.

HARRISON FAMILY BUSINESS,
LLC, *et al.*

    *Defendants.*

Civil Action No.: ELH-14-03778

## MEMORANDUM OPINION

On December 3, 2014, LNV Corporation ("LNV"), successor in interest to the Bank of

Eastern Shore ("BOES"), filed suit against Harrison Family Business, LLC ("HFB"), alleging

that HFB defaulted on a commercial loan for $2,600,000 ("Term Loan") that HFB had obtained

from BOES in February 2010.[1]  ECF 1, Complaint.  LNV also named as defendants the

guarantors of the loan: Harrison's Country Inn and Sport Fishing Center, Inc. ("HCI"); Levin F.

Harrison, IV ("Harrison IV" or "Mr. Harrison"); Leslie A. Harrison; the Estate of Levin F.

Harrison, III ("Harrison III"); and the Estate of Roberta L. Harrison ("Roberta Harrison").  *Id.* at

1.  Harrison III and Roberta Harrison are the deceased parents of Harrison IV.  Leslie Harrison is

the wife of Harrison IV.

In a First Amended Complaint filed on January 8, 2015 (ECF 17, Amended Complaint),

plaintiff further alleged that HFB defaulted on a second commercial loan, in the amount of

---

[1] LNV is incorporated in Nevada and has its principal place of business in Texas.  ECF
17 at 2 ¶ 1, Amended Complaint.  Jurisdiction is founded on diversity of citizenship.  *See* 28
U.S.C. § 1332.

$100,000 ("Revolving Loan"), which HFB had obtained from BOES in February 2010. ECF 17 at 5 ¶ 22. As to this claim, LNV also sued the same guarantors. In support of its allegations, LNV appended numerous exhibits to its Amended Complaint. ECF 17-1 to ECF 17-17.

The Amended Complaint contains six counts.[2] In Count I, LNV seeks confessed judgment against HFB under the terms of the Term Loan Note. ECF 17 ¶¶ 44-50. In Count II, LNV seeks confessed judgment against HFB under the terms of the Revolving Loan Note. *Id.* ¶¶ 51-57. Count III contains a breach of contract claim against the guarantors with respect to the Term Note. *Id.* ¶¶ 58-64. In Count IV, LNV alleges breach of contract against the guarantors as to the Revolving Note. *Id.* ¶¶ 65-71.

Count V sought the appointment of a Receiver, and Count VI sought injunctive relief. *See id.* ¶¶ 72-89. In connection with Counts V and VI, LNV also filed a motion for appointment of a receiver and for injunctive relief. *See* ECF 3. As a result, the Court held an evidentiary hearing on September 3, 2015. ECF 62; ECF 63. The motion was addressed in a Memorandum (ECF 67) and Order (ECF 68) issued September 18, 2015.

On September 28, 2015, as to Count I and Count II, LNV filed a Request for Entry of Confessed Judgment against HFB. ECF 70. By Order of October 22, 2015, I allowed HFB to respond to LNV's Request for Entry of Confessed Judgment and permitted LNV to reply. ECF 83. HFB responded on October 26, 2015. ECF 85, "Opposition." LNV replied (ECF 86, "Reply"), and submitted three exhibits. ECF 86-1 to ECF 86-3.

---

[2] Because the Amended Complaint is the operative complaint, I shall refer only to the claims asserted in that pleading. However, some of the same claims were contained in the initial Complaint.

LNV's Request for Entry of Confessed Judgment has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant, in part, LNV's Request for Entry of Confessed Judgment.

## I. Factual Background[3]

Since 1898, the Harrisons have operated hospitality, dining, and fishing businesses in Tilghman, Maryland. *See* ECF 8-2 ¶ 3, Declaration of Levin F. Harrison, IV ("Decl. of Harrison IV"). During the early 1930s, Levin F. Harrison, Jr. purchased the property and the building that the Harrison family continues to operate as Harrison's Country Inn (the "Inn"). *Id.* ¶ 10. Harrison III and his wife, Roberta Harrison, inherited the Inn during the late 1970s. Today, the Inn includes more than forty rooms for overnight guests, a restaurant and bar that can accommodate about one hundred patrons, a small gift shop, and a marina with slips from which customers can charter fishing cruises.

During early 2003, the Harrisons created HFB "to own, operate and manage real estate," which included the Inn and two other parcels.[4] *Id.* ¶ 5; *see* ECF 17-2 at 17-18, Deed of Trust for the Term Loan, Exhibit A; ECF 17-7 at 18-19, Deed of Trust for the Revolving Loan, Exhibit A. According to Mr. Harrison's testimony at the motions hearing, the Harrison family created HFB

---

[3] In the factual summary, I rely on my notes of testimony adduced at the evidentiary hearing held on September 3, 2015, in connection with LNV's motion to appoint a receiver. *See* ECF 3. Unfortunately, I do not have a transcript of the proceedings and therefore I cannot provide citations. In addition, I have drawn on and incorporate herein the factual summary set forth in my Memorandum Opinion of September 18, 2015 (ECF 67) and my Memorandum Opinion of October 1, 2015 (ECF 72), addressing, respectively, LNV's motion for appointment of a receiver (ECF 3) and LNV's motion to strike affirmative defenses (ECF 41).

[4] The properties are located at 21544 Chesapeake House Drive, Tilghman, Maryland 21671; 21415 Main Street, Tilghman, Maryland 21671; and Lot 1, 0.878 Acres, E/S Main Street, Tilghman, Maryland 21671. ECF 17-2 at 17-18, Deed of Trust for the Term Loan, Exhibit A.

on the advice of an accountant so that the properties could be used as collateral to obtain financing from BOES.  *See* ECF 8-2 at 2 ¶ 8, Decl. Harrison IV.

Prior to February 2010, the Harrison family owed about $2,500,000, inclusive of personal and business debt.  During the Fall of 2009, Harrison III, Roberta Harrison, and Harrison IV entered into discussions with BOES to consolidate and refinance their existing loans and to borrow an additional $200,000.  *See id.* ¶ 9.

On February 16, 2010, BOES extended two commercial loans to HFB.  As noted, the first is the Term Loan for $2,600,000.  *See* ECF 17-1, Term Loan Note.  The second is the Revolving Loan for $100,000.  ECF 17-6, Revolving Loan Note.  Each loan is secured by a Deed of Trust. ECF 17-2, Deed of Trust for the Term Loan; ECF 17-7, Deed of Trust for the Revolving Loan.

Harrison III, Roberta Harrison, and Harrison IV signed the notes for both loans as members of HFB.[5]  ECF 17-1 at 5, Term Loan Note; ECF 17-6 at 7, Revolving Loan Note. Harrison III, Roberta Harrison, Harrison IV, Leslie Harrison, and HCI executed guaranty agreements for each loan.  ECF 17-4 at 4, Guaranty for Term Loan (signed individually by Harrison III, Roberta Harrison, Harrison IV, and Leslie Harrison); ECF 17-5 at 4, Guaranty for Term Loan (on behalf of HCI, signed by Harrison IV, Harrison III, and Roberta Harrison as HCI's officers); ECF 17-8 at 4, Guaranty for Revolving Loan (signed individually by Harrison III, Roberta Harrison, Harrison IV, and Leslie Harrison); ECF 17-9 at 4, Guaranty for Revolving Loan (on behalf of HCI, signed by Harrison IV, Harrison III, and Roberta Harrison as HCI's officers).  Harrison III and Harrison IV also provided BOES with a Preferred Ship Mortgage as

---

[5] Harrison IV concedes that he was not, in fact, a member of HFB when he signed the loan documents as a purported member.  ECF 8-2 ¶¶ 7-8, Decl. of Harrison IV. He explains that he "was mistaken in [his] good faith belief" that he had received a membership interest in HFB before signing the loan documents.  *Id.* ¶ 8.

to the vessel "Captain Buddy." ECF 17-11 at 8, Preferred Ship Mortgage. According to LNV, "Harrison IV was approximately 51 years of age at the time he executed the Loans on behalf of" HFB. ECF 17-17 at 5 ¶ 15, Decl. of Robert Bowen, Portfolio Manager for CLMG Corporation, LNV's loan servicer, dated January 8, 2015; ECF 86 at 2 ¶ 4, Reply. Defense counsel maintained at the hearing in September 2015 that BOES induced the Harrisons to take out the loans.

On April 27, 2012, the Maryland Commissioner of Financial Regulation closed BOES (ECF 17 at 8 ¶ 33, Amended Complaint) and the Federal Deposit Insurance Corporation ("FDIC") was appointed as BOES's Receiver. *Id.* On August 20, 2014, the FDIC, as BOES's Receiver, assigned to LNV the deeds of trust that HFB had executed to secure its loans from BOES. ECF 17-13, Assignment of Deed of Trust; ECF 17-14, Assignment of Deed of Trust. LNV recorded the assignments in the land records of Talbot County, Maryland. ECF 17-13 at 7, Assignment of Deed of Trust; ECF 17-14 at 7, Assignment of Deed of Trust.

In 2013, HFB began to miss payments due on the loans. ECF 17 at 9 ¶ 37, Amended Complaint; ECF 32 at 7 ¶ 37, Answer to Amended Complaint. On November 13, 2014, LNV, as BOES's successor in interest, demanded that HFB and the loans' guarantors bring the notes current. ECF 17-15, Letter from LNV's Counsel to Defendants dated Nov. 13, 2014; ECF 17-16, Letter from LNV's Counsel to Defendants dated Nov. 13, 2014. At the hearing on September 3, 2015, Mr. Harrison conceded that HFB has not made payments on either loan in over a year. When HFB failed to do so, LNV filed suit.

As noted, in Counts I and II, LNV seeks confessed judgments as to both loans, pursuant to the terms of each note.

In relevant part, the Term Loan Note provides, ECF 17-1 at 3-4:

> 7.02.  *Confessed Judgment* -- Any attorney at law may appear in any court of record in the State of Maryland or in the United States, after demand on this Note, and waive the issuing of service of process and confess a judgment against the Marker in favor of the Holder, for the amount then appearing due hereunder, together with costs of suit, interest, and 15 % attorney's fees, and thereupon release all errors and waive all rights of appeal.

The Revolving Loan Note provides, in pertinent part, ECF 17-6 at 6:

> 14.  CONFESSED JUDGMENT
>
> Each Obligor who signs this Note as Maker, endorser, or Guarantor, hereby authorizes and empowers any attorney of record of any court within the United States to appear for such Obligor in any court, waiving any objection to venue, in one or more proceedings, or before any clerk thereof, and confess judgment against each such Obligor, WITHOUT PRIOR NOTICE, OR OPPORTUNITY FOR HEARING, in favor of Lender for the amount then due and payable and otherwise matured as provided in this Note, with interest accrued thereon, and an attorney's fee of 15%, hereby waiving and releasing, to the extent permitted by law, all errors and rights of redemption, appeal, stay of execution, inquisition and extension upon any levy on real estate, or personal property to which each such Obligor may otherwise be entitled under the law of the United States now in force or which hereafter may be executed. However, this authority to confess judgment shall not in any circumstances extend to, or be be [sic] construed to extend to, and no judgment confessed shall create or be construed to create a lien on any real property or any divisible portion thereof which is used or expected to be used as the dwelling or principal residence of such Obligor. The Lender reserves the right to seek a judicial lien against such real property used as a dwelling or principal residence through a judgment not obtained by confession.

## III.  Discussion

In its two-page Opposition, HFB makes three principal arguments in response to LNV's Request for Entry of Confessed Judgment.  First, HFB argues: "A judgment by confession is a product of State law and has no counterpart in the Federal rules."  ECF 85 at 1 ¶ 1, Opposition. HFB maintains: "Maryland Rule 2-611 governs confessed judgments and, therefore, is dispositive [sic] of Plaintiff's request."  *Id*.  HFB contends that LNV's request for entry of confessed

judgments is improper as LNV has not complied with the formalities of Maryland Rule 2-611. *See id.* at 1-2 ¶¶ 3-4.

In particular, HFB argues that LNV has not submitted an affidavit using the form affidavit as provided in Maryland Rule 2-611. *See id.* However, HFB does not explain why this Court would rely on a Maryland procedural rule, rather than a federal procedural rule. In any event, HFB has not contested the authenticity of the copies of the Term Loan Note (ECF 17-1) or the Revolving Loan Note (ECF 17-6), which LNV has submitted. Nor has it identified any specific deficiencies in the form of the declarations provided by LNV.

Second, HFB contends that LNV has miscalculated the amounts due on the loans. *See id.* at 2 ¶ 5. It points to a relatively small discrepancy between the sums previously requested by LNV and those requested currently. *See id.* It appears that the discrepancies are the result of interest that continues to accrue.

Finally, HFB argues that, pursuant to Maryland state law, LNV's request for "attorney's fees in the amount of fifteen percent (15%) of the unpaid principle [sic] of the Term Note and Revolving Loan Note" is inappropriate, as "a creditor may collect its actual and reasonable attorney's fees, and not merely request a percentage of fees based exclusively upon the language in the agreement." *Id.* at 2 ¶ 6.[6]

---

[6] HFB also contends: "There is no legal basis for the court to enter judgment by confession because the loan documents authorize an attorney and not the Court to confess judgment. (ECF 17-1 at § 7.02 and ECF 17-6 at § 14.)" ECF 85 at 2 ¶ 7. According to LNV: "The Term Note and the Revolving Loan Note do not require a separate attorney to enter an appearance for Defendant, but, in order to negate any argument on this issue and to minimize any continued delay in having confessed judgment entered, the aforementioned entry of appearance is being filed." ECF 86 at 5 n.3. LNV also submits that such an appearance is "not required by Local Rule 108 . . . ." ECF 86 at 5 n.3.

LNV counters: "Local Rule 108 sets forth the requirements and procedures for obtaining a judgment by confession in this Court." ECF 86 at 1 ¶ 1, Reply. And, it argues that it has satisfied the requirements of Local Rule 108. *Id.* at 2-3, ¶¶ 4-7. LNV also states: "When Plaintiff again requested the entry of confessed judgment on September 28, 2015 (ECF No. 70), it simply updated the interest and late fees that had accrued since January 2015." ECF 86 at 4, ¶ 9. Finally, LNV clarifies that "Plaintiff is only seeking an award of the attorneys' fees and costs incurred to date." *Id.*

## A. Confessed Judgment

Under Maryland law,[7] a confessed judgment is a "device designed to facilitate collection of a debt." *Schlossberg v. Citizens Bank*, 341 Md. 650, 655, 672 A.2d 625, 627 (1996). A confession of judgment clause, occasionally described more archaically as a "cognovit," is a

---

In any event, on November 2, 2015, J. David Folds, Esquire, of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., entered his appearance as attorney-in-fact for HFB and consented to the entry of the confessed judgments. *See* ECF 87, Entry of Appearance and Consent to Judgment.

[7] The parties have not addressed choice of law issues, although HFB cites to Maryland law. Section 7.01 of the Term Loan Note states, ECF 17-1 at 3: "This Note shall be governed by and construed according to the laws of the State of Maryland, without regard to principles of conflict of laws." The Revolving Loan Note does not have a comparable clause. However, both the Term Loan Note (ECF 17-1 at 4 § 7.03) and the Revolving Loan Note (ECF 17-6 at 6 § 15) state that each loan "is a 'commercial loan' as defined in the Commercial Law Article of the Annotated Code of Maryland."

Maryland applies the law of the State in which the contract was formed ("lex loci contractus"), unless the parties to the contract agreed to be bound by the law of another State. *See*, *e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995). All of the parties were based in Maryland. The Term Loan Note indicates that it was executed in Maryland. ECF 17-1 at 4. The Revolving Loan Note appears to have been executed in Maryland. ECF 17-6 at 2 (indicating "Dorchester County, Maryland" at the beginning of the note). For these reasons, and because neither side suggests otherwise, I shall apply Maryland law.

provision that is sometimes included in a debt instrument, by which the debtor "agree[s] to the entry of judgment against [the debtor] without the benefit of a trial in the event of default on the debt instrument." *Id*.; *see* BLACK'S LAW DICTIONARY 296, 339 (9th ed. 2009) (definitions of "cognovit" and "confession of judgment").

Maryland courts have recognized that, in some circumstances, "a confessed judgment note serves a salutary purpose." *Nils, LLC v. Antezana*, 171 Md. App. 717, 726, 912 A.2d 45, 50 (2006), *cert. denied*, 397 Md. 397, 918 A.2d 469 (2007). "When unchallenged or not successfully challenged," a confessed judgment "permits the holder to by-pass the trouble, the time, the expense, and the uncertainty of a trial." *Id.* Nevertheless, "'[j]udgments by confession are not favored in Maryland, because Maryland courts have long recognized that the practice of including in a promissory note a provision authorizing confession of judgment lends itself far too readily to fraud and abuse.'" *Gambo v. Bank of Md.*, 102 Md. App. 166, 185, 648 A.2d 1105, 1114 (1994) (citation omitted). Therefore, the Maryland Court of Appeals "has made clear that judgments by confession are to be 'freely stricken out on motion to let in defenses.'" *Schlossberg*, 341 Md. at 655, 672 A.2d at 627 (citation and some internal quotation marks omitted). The disfavored status of confessed judgments is also made plain by the many provisions of Maryland law that prohibit the use of confessed judgment clauses in a wide variety of contractual contexts. *See Sager v. Housing Com'n of Anne Arundel County*, 855 F. Supp. 2d 524, 554 (D. Md. 2012).

District of Maryland Local Rule 108.1 governs the entry of judgment by confession in this Court. *Hunt v. Kadlick*, 972 F. Supp. 2d 772, 774 (D. Md. 2013); *Understein v. McKiver*, DKC-14-1452, 2014 WL 7048969, at *5 (D. Md. Dec. 11, 2014); *Sager*, 855 F. Supp. 2d at 553

n.37 ("The current provisions applicable in Maryland state courts under the Maryland Rules are analogous to this Court's procedures with respect to confessed judgments. *See* Local Rule 108.1.").

Local Rule 108(1)(a) provides:

> A complaint requesting the entry of judgment by confession shall be filed by the plaintiff accompanied by the written instrument authorizing the confession of judgment and entitling the plaintiff to a claim for liquidated damages and supported by an affidavit made by the plaintiff or someone on that party's behalf stating the specific circumstances of the defendant's execution of said instrument and including, where known, the age and education of the defendant, and further including the amount due thereunder, and the post office address (including street address if needed to effect mail delivery) of the defendant.

Local Rule 108(1)(b) states:

> Upon review of the aforesaid documents, the Court may direct the entry of judgment upon a finding that the aforesaid documents prima facie establish (1) a voluntary, knowing, and intelligent waiver by the defendant of the right to notice and a prejudgment hearing on the merits of the claim of the plaintiff for liquidated damages and (2) a meritorious claim of the plaintiff for liquidated damages against the defendant.

LNV's submissions satisfy Local Rule 108(1)(a). As discussed, the Term Loan Note and the Revolving Loan Note each contain provisions that call for entry of a confessed judgment in the event of default. ECF 17-1 at 3-4 § 7.02, Term Loan Note; ECF 17-6 at 6 § 14, Revolving Loan Note. HFB's default is undisputed. LNV also appended to its Amended Complaint a Declaration of Robert Bowen, a Portfolio Manager for CLMG Corporation, LNV's loan servicer, dated January 8, 2015. ECF 17-17. Mr. Bowen's affidavit specifies: (1) the circumstances under which HFB executed the loan documents, *id.* at 3, ¶¶ 5-7; (2) that "Harrison IV was approximately 51 years of age at the time he executed the Loans on behalf of" HFB, *id.* at 5 ¶ 15;

(3) the amounts due under each loan agreement, *id.* at 4 ¶¶ 11-12; and (4) HFB's post office address, *id.* at 4 ¶ 13.

In addition, LNV appended to its Reply a Revised Declaration by Mr. Bowen, dated November 2, 2015. ECF 86-1. Mr. Bowen's Revised Declaration provides substantially the same information as found in his earlier declaration (ECF 17-17), but updates the amounts due on both loans to reflect interest due through November 1, 2015. ECF 86-1 at 4 ¶¶ 11-12. Unlike Mr. Bowen's original Declaration of January 8, 2015, which sought attorney's fees in the amount of "15% of the total unpaid principal" for each loan, pursuant to the terms of the notes, (ECF 17-17 ¶¶ 11-12), Mr. Bowen's Revised Declaration of November 2, 2015, seeks actual attorney's fees and costs, which are less than 15% of the unpaid principal. *See* ECF 86-1 ¶¶ 11-12.

LNV's submissions also satisfy Local Rule 108(1)(b). The record establishes that HFB's members voluntarily, knowingly, and intelligently waived the right of notice and a prejudgment hearing on the merits. As LNV notes: "Although courts do not usually have the benefit of any response from the defendant prior to considering the entry of judgment by confession, in this case the Defendant already has conceded the authenticity of the loan documents." ECF 86 at 3 ¶ 6, Reply; *see, e.g.,* ECF 32 at 3 ¶ 13, 4-5 ¶ 22, Answer to Amended Complaint (conceding the authenticity of the Term Loan Note and Revolving Loan Note). Notwithstanding defense counsel's contention at the hearing on September 3, 2015, to the effect that BOES induced the Harrisons to take out the loans, the record suggests that the Harrisons were informed participants in a sophisticated commercial transaction. As noted, Mr. Harrison testified at the hearing that the Harrisons already owed about $2,500,000 when they entered into the loan agreements at issue here. Moreover, the record shows that the Harrisons created HFB on the advice of an accountant

and transferred real property to HFB for the purpose of taking out loans, including, ultimately, the Term Loan and the Revolving Loan.

LNV has established meritorious confessed judgment claims against HFB. As noted, HFB acknowledges that it is in default. *See* ECF 32 at 7 ¶ 37, Answer to Amended Complaint ("Defendants admit that Borrower has failed to make 15 consecutive scheduled payments on the Term Note, and 16 consecutive scheduled payments on the Revolving Loan Note . . . ."). Moreover, at the motions hearing, Mr. Harrison conceded that HFB has not made payments on either loan in over a year. LNV has satisfied Local Rule 108(1)(b), and entry of confessed judgments against HFB is appropriate.

### B. Damages

Pursuant to the confessed judgment provisions of the Term Loan Note (ECF 17-1 at 3-4 § 7.02) and Revolving Loan Note (ECF 17-6 at 6 § 14), LNV requests the following damages, ECF 86-1 at 4, ¶¶ 11-12, Bowen Rev. Decl.:

> Through and including November 1, 2015, the total due and owing under the Term Note was $2,927,360.43, consisting of $2,493,453.39 in unpaid principal, $245,916.84 in unpaid and accrued interest, $16,957.41 in unpaid late fees, $165,353.02 in attorneys' fees and costs (as reflected in the Declarations of John McJunkin [(ECF 86-2)] and Stephen B. Jackson [(ECF 86-3)] filed concurrently herewith),[] plus the negative escrow balance of $5,679.77 (for flood insurance paid for by the lender on behalf of the Borrower), with interest accruing at the per diem rate of $311.68 starting on November 2, 2015.

> Through and including November 1, 2015, Borrower owed a total of $114,797.24 under the Revolving Loan Note, consisting of $97,492.01 in unpaid principal, $10,480.39 in unpaid and accrued interest, $203.84 in unpaid late fees, $6,621.00 in attorneys' fees and costs (as reflected in the Declarations of John McJunkin [(ECF 86-2)] and Stephen B. Jackson [(ECF 86-3)] filed concurrently herewith), with interest accruing at the per diem rate of $12.19 starting on November 2, 2015.

Mr. Bowen states in his Revised Declaration, ECF 86-1 at 4 n.1: "For purposes of allocation between the Term Note and the Revolving Loan Note, the legal fees and costs were split in proportion to the amounts of the respective loans. Using that approach yields attorneys' fees and costs of $165,353.02 for the Term Note and of $6,621.00 for the Revolving Loan Note."

With its Reply (ECF 86), LNV submitted two declarations from LNV's attorneys, describing legal services rendered and corresponding fees. *See* ECF 86-2, Decl. of John G. McJunkin, Esquire, dated Nov. 2, 2015; ECF 86-3, Decl. of Stephen B. Jackson, Esquire, dated Nov. 1, 2015.

John McJunkin, Esquire, a shareholder of Baker Donelson Bearman Caldwell & Berkowitz, PC ("Baker Donelson"), described his own work and that of others at Baker Donelson on behalf of LNV. ECF 86-2 ¶ 2. According to Mr. McJunkin, he and three other attorneys at Baker Donelson, whose billing rates range from $325 per hour to $495 per hour, spent "[a]pproximately 387 hours of professional time" on this matter through November 1, 2015. *Id.* ¶ 4. Mr. McJunkin stated, in part, *id.* ¶ 5:

> In connection with this matter, Baker Donelson attorneys have: reviewed the relevant Loan Documents; assisted LNV in analyzing and assessing possible recovery and liquidation scenarios with respect to the collateral for the loans at issue; drafted and coordinated service of Complaint; drafted an Amended Complaint; prepared pleadings, motions, declarations and other documents for filing with this Court; conducted legal research; developed case strategy; coordinated with real estate foreclosure counsel; worked on ship mortgage arrest and foreclosure under the applicable maritime rules and laws; prepared for and attended mediation (including review and assessment of financial information provided by the Defendants); prepared and filed claims in the decedent estate cases of the late Mr. and Mrs. Levin Harrison III; engaged in multiple settlement discussions with Defendants' counsel outside the mediation context; and prepared for (including issuance of subpoenas and review of financial information from the Defendants) and attended a full day hearing on LNV's motion for the appointment of a receiver and its motion to strike Defendants' affirmative defenses . . . .

13

Mr. McJunkin further "submits that the attorneys' fees actually incurred of $160,482.00, plus costs and expenses in the amount of $5,773.51, for a total of $166,255.51 through November 1, 2015 are reasonable." *Id.* ¶ 7.

The Declaration of Stephen Jackson, Esquire (ECF 86-3) details the legal services that he performed on LNV's behalf. Mr. Jackson, a shareholder of Heise Jorgensen & Stefanelli P.A., serves as counsel for LNV in its foreclosure action against HFB in the Circuit Court for Talbot County, Maryland.[8] *Id.* ¶ 2. According to Mr. Jackson: "Approximately 15 hours of professional time have been spent on this file through November 1, 2015." *Id.* ¶ 4. Mr. Jackson stated: "In connection with this matter, I have: reviewed the relevant loan documents; reviewed and obtained updated title searches; and prepared all relevant documents, pleadings and notifications as required by law in order to pursue foreclosure." *Id.* ¶ 5. Mr. Jackson "submits that the attorneys' fees actually incurred of $4,575.00, plus costs and expenses in the amount of $1,143.51 for a total of $5,718.51 through November 1, 2015 are reasonable." *Id.* ¶ 7.

As noted, the confessed judgment provisions of both the Term Loan Note, ECF 17-1 at 3-4 § 7.02, and the Revolving Loan Note, ECF 17-6 at 6 § 14, allow for a sum of attorneys' fees amounting to fifteen percent of the unpaid principal. And, HFB concedes that authenticity of the loan documents. ECF 32 at 3 ¶ 13, 4-5 ¶ 22, Answer to Amended Complaint. HFB's sole objection to LNV's request for attorneys' fees is that, under Maryland law, "a creditor may collect its actual and reasonable attorney's fees, and not merely request a percentage of fees based exclusively upon the language in the agreement." ECF 85 ¶ 6, Opposition (citing *Suntrust Bank v. Goldman*, 201 Md. App. 390, 29 A.3d 724 (2011)).

---

[8] LNV began foreclosure proceedings in Maryland state court in August 2015. ECF 58-1, Notice of Intent to Foreclose dated August 12, 2015.

"Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe,* 391 Md. 188, 207, 892 A.2d 520, 532 (2006). "It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods,* 353 Md. 425, 445, 727 A.2d 358, 368 (1999) (quoting *Canaras v. Lift Truck Servs.,* 272 Md. 337, 350, 322 A.2d 866, 873 (1974)); *see Loudin Ins. Agency, Inc. v. Aetna Cas. & Sur. Co.,* 966 F.2d 1443, 1992 WL 145269, at *5 (4th Cir. 1992) (per curiam) ("[A] court will not rewrite the parties' contract simply because one party is no longer satisfied with the bargain he struck.").

In a diversity action such as this, a party's right to recover attorney's fees is ordinarily governed by state law. *See Ranger Constr. Co. v. Prince William Cnty. Sch. Bd.,* 605 F.2d 1298, 1301 (4th Cir.1979); *Rohn Prods. Int'l, LC v. Sofitel Capital Corp.,* Civ. No. WDQ–06–504, 2010 WL 3943747, at *4 n. 13 (D. Md. Oct. 7, 2010); *Glassman Constr. Co. v. Md. City Plaza, Inc.,* 371 F. Supp. 1154, 1162 (D. Md.1974). "'[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.'" *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31 (1975) (quoting 6 J. Moore, Federal Practice § 54.77(2), at 1712–1713 (2d ed. 1974)).

In general, Maryland follows the "American Rule," under which "a prevailing party is not awarded attorney's fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a

defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Nova Research, Inc. v. Penske Truck Leasing Co.,* 405 Md. 435, 445, 952 A.2d 275, 281 (2008) (quoting *Thomas v. Gladstone,* 386 Md. 693, 699, 874 A.2d 434, 437 (2005)).

However, "Maryland law limits the amount of contractual attorneys['] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust Bank,* 201 Md. App. at 398, 29 A.3d at 728. Moreover, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers,* 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.,* 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust,* 201 Md.App. at 401, 29 A.3d at 730. Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton,* 416 Md. 325, 333, 7 A.3d 1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers,* 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico,* 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'" that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall,* 134 Md.App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied,* 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, vel non, of the fees can be determined only by

conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel,* 373 Md. 501, 504–05, 819 A.2d 354, 356 (2003) (*"Friolo I"*).[9] However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows,* 416 Md. at 336, 7 A.3d at 7. This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.,* 200 Md.App. 489, 505, 28 A.3d 75, 84 (2011).

Appendix B of the Local Rules of this Court specifies that the rules and guidelines in Appendix B "do not apply to cases in which statutes or contracts authorize fees based on a fixed percentage. . . ." *See* Appendix B, n.1. In Maryland, in regard to an award based on a contract, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional

---

[9] The *Friolo* litigation has spawned numerous reported opinions of the Maryland appellate courts concerning the award of attorneys' fees. *See Frankel v. Friolo,* 170 Md. App. 441, 907 A.2d 363 (2006) (*"Friolo II"*) (holding that, when applying the lodestar approach, a court must provide a "clear explanation of the factors employed"), *aff'd,* 403 Md. 443, 942 A.2d 1242 (2008) (*"Friolo III"*) (holding that an award of attorneys' fees under a fee shifting statute should include "appellate fees ... incurred in successfully challenging . . . the attorneys' fee awarded"); *Friolo v. Frankel*, 438 Md. 304, 91 A.3d 1156 (2014) (*"Friolo IV"*) (reiterating the loadstar approach and concluding that a plaintiff's continued litigation in lieu of settlement does not preclude attorneys' fees and that appellate attorneys' fees are available pursuant to an appeal concerning attorneys' fees).

Conduct ("MRPC")[10]] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows,* 416 Md. at 336–37, 7 A.3d at 8. Nevertheless, cases decided under the lodestar approach can "provide helpful guidance" in contractual fee-shifting cases, *Congressional Hotel,* 200 Md.App. at 505, 28 A.3d at 85, because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows,* 416 Md. at 337, 7 A.3d at 8.

MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":[11]

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

---

[10] MRPC 1.5(a) is a standard of professional ethics, generally applicable to all attorney-client relationships, which mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

[11] A list of factors similar to those in MRPC 1.5 was enunciated, for use in a lodestar analysis, in the seminal case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The so-called *"Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978), and in Maryland. *See Friolo I,* 373 Md. at 522 n. 2, 819 A. 2d at 366 n .2.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately." *SunTrust,* 201 Md. A pp. at 401, 29 A.3d at 730; *see Monmouth Meadows,* 416 Md. at 337 n.11, 7 A.3d at 8 n.11. Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows,* 416 Md. at 340 n. 13, 7 A.3d at 10 n.13.

Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the amount at issue, the relative size of the award is something to be evaluated." *Id.* at 337, 7 A.3d at 8. And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337–38, 7 A.3d at 8.

As discussed, LNV seeks $165,353.02 in attorneys' fees and costs pursuant to the Term Loan (ECF 86-1 at 4 ¶ 11, Bowen Rev. Decl.) and $6,621.00 in attorneys' fees and costs pursuant to the Revolving Loan. *Id.* ¶ 12. LNV has also submitted declarations from two of its attorneys, which provide some of the information relevant to the Court's analysis of the reasonableness of the fees that LNV seeks. *See* ECF 86-2, McJunkin Decl.; ECF 86-3, Jackson Decl. But, the submissions provide insufficient information for the Court to render a decision about the reasonableness of the legal fees that LNV requests.

For example, LNV's submissions do not address most of the factors enumerated in MRPC 1.5. In addition, LNV's attorneys have not specified by whom the various services were performed, the time expended thereon, and the hourly rates charged. *Rauch,* 134 Md. App. at 639, 761 A.2d at 84.

In addition, Mr. McJunkin's Declaration provides a total number of hours that he and three other Baker Donelson attorneys billed to this matter. ECF 86-2 ¶ 4. Given that LNV was represented by two attorneys at the September 3, 2015 evidentiary hearing, it appears that at least some of the billable hours listed in Mr. McJunkin's Declaration reflect work performed by more than one attorney, without an explanation as to the need for multiple attorneys in a case that is not particularly complicated. Appendix B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases of this Court's Local Rules provides that, as a general rule, only one attorney for each party will be compensated for attending depositions and hearings, and that fees covering the attendance of multiple attorneys at trial should be evaluated "depend[ing] upon the complexity of the case and the role that each lawyer is playing." *See* App. B, Guideline 2.b-d. Despite note 1 in Appendix B, the Court is unaware of any reason to disregard the rational of Guideline 2.b-d.

Accordingly, with respect to the Term Loan Note, LNV is entitled to confessed judgment against HFB in the amount of $2,762,007.41, consisting of $2,493,453.39 in unpaid principal, $245,916.84 in unpaid and accrued interest, $16,957.41 in unpaid late fees, and $5,679.77 in a negative escrow balance, with interest accruing at the rate of $311.68 *per diem* after November 1, 2015.

With respect to the Revolving Loan Note, LNV is entitled to confessed judgment against HFB in the amount of $108,176.24, consisting of $97,492.01 in unpaid principal, $10,480.39 in unpaid and accrued interest, and $203.84 in unpaid late fees, with interest accruing at the rate of $12.19 *per diem* after November 1, 2015.

Pursuant to Local Rule 109.2(a), LNV may file a Motion Requesting Attorneys' Fees, within twenty-one days of the entry of judgment. HFB may respond within twenty-one days of service of LNV's Motion.

### Conclusion

For the foregoing reasons, I will grant, in part, LNV's Request for Entry of Confessed Judgment, and deny it, in part, and without prejudice. A separate Order follows, consistent with this Memorandum.


Date: November 23, 2015             _____/s/_____
                                    Ellen Lipton Hollander
                                    United States District Judge